46 F.3d 1152
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Deborah A. PEET, Defendant-Appellant.
 No. 93-3057.
United States Court of Appeals, Tenth Circuit.
 Jan. 12, 1995.
 
 1
 Before BALDOCK and EBEL, Circuit Judges, and CARRIGAN, District Judge.*
 
 
 2
 ORDER AND JUDGMENT**
 
 
 3
 CARRIGAN, District Judge.
 
 
 4
 Appellant Deborah Ann Peet was convicted of conspiring to distribute cocaine in violation of 18 U.S.C. Secs. 841(a)(1) and 846. Ms. Peet appeals her conviction, asserting that: (1) the district court erred in failing to suppress statements made during an interview at the FBI offices; (2) her Sixth Amendment rights were violated when the district court excluded the testimony of two defense witnesses; and (3) the district court erred in allowing cross-examination on the subjects of her urinalysis and possession of drug paraphernalia at the time of her arrest. We affirm.
 
 
 5
 I. FACTUAL BACKGROUND.
 
 
 6
 The indictment alleged that Ms. Peet, Doug Fairchild, and Chris Fairchild conspired to sell cocaine to Paul Day between September 1987 and March 1991, utilizing the following scheme: Mr. Day wrote checks to third parties from his parents' business, Day Cattle Company, and delivered them to Mr. Doug Fairchild. Mr. Doug Fairchild deposited the checks in his personal bank account or the account of a car repair business he owned with Mr. Chris Fairchild. Alternatively, the checks were given to Ms. Peet who deposited them in her personal account. The funds then were withdrawn and returned to Mr. Day, who used them to pay for cocaine. Neither Ms. Peet nor the Fairchilds had any relationship with the payees, nor were they authorized to negotiate instruments on behalf of the payees.
 
 
 7
 The FBI and the IRS became aware of this scheme and conducted an investigation that focused on Mr. Day. During questioning, Mr. Day admitted that the proceeds of the checks were used to pay for cocaine he had purchased from Mr. Doug Fairchild. He also agreed to cooperate with the investigators in gathering evidence against Ms. Peet and the Fairchilds. During the fall of 1990 and early spring of 1991, Mr. Day secretly tape recorded conversations in which Doug Fairchild admitted providing cocaine to Mr. Day and Ms. Peet admitted laundering money.
 
 
 8
 II. ASSERTED MIRANDA VIOLATIONS.
 
 
 9
 The first issue on appeal is whether the district court erred in denying Ms. Peet's motion to suppress statements made by her during an interview at the FBI offices. Ms. Peet asserts that the statements were made in the absence of Miranda warnings. See Miranda v. Arizona, 384 U.S. 436 (1966). The government responds that Miranda warnings were unnecessary because Ms. Peet was not in custody.
 
 
 10
 A person is in custody when she is placed under formal arrest or has her freedom of movement restrained to a degree associated with formal arrest. United States v. Chalan, 812 F.2d 1302, 1306 (10th Cir.1987), cert. denied, 488 U.S. 983 (1988). The court must examine how a reasonable person in the suspect's position would have understood her situation. Id. A district court's determination that a suspect was not in custody for purposes of Miranda is reviewed for clear error. Cordoba v. Hanrahan, 910 F.2d 691, 693 (10th Cir.), cert. denied, 498 U.S. 1014 (1990).
 
 
 11
 Ms. Peet went voluntarily to the Federal Building in Topeka, Kansas, at the request of a government agent. She was advised that she was the subject of an investigation but that she was not under arrest and would not be arrested that day. She also was told that she was free to leave at any time. Following the interview, Ms. Peet departed freely. She now contends that an outside door was locked, but this testimony was contradicted by a government agent. Thus the district court's determinations that she was not in custody, and that her Miranda rights were not violated, were not clearly erroneous.
 
 
 12
 Even if a suspect's Miranda rights are not violated, her statements may be inadmissible if made involuntarily. Chalan, 812 F.2d at 1307. Voluntariness depends upon an assessment of the totality of the circumstances, including the suspect's age, education and intelligence, the length of her detention, and whether physical abuse was employed. Id. The district court's underlying factual determinations are reviewed under a clearly erroneous standard, but the question of voluntariness is reviewed de novo. Id. at 1307-08.
 
 
 13
 Ms. Peet held a responsible position for a national shoe company and had been a merit scholar in high school. She attended the interview willingly, and was questioned for only a few hours. It is not asserted that she was physically abused. There simply is no evidence that her statements were involuntary. Thus, we conclude that the district court did not err when it denied Ms. Peet's motion to suppress.
 
 
 14
 III. ADMISSIBILITY OF EXCULPATORY EVIDENCE.
 
 
 15
 At trial, Ms. Peet attempted to present a defense that, at most, she had laundered money for Mr. Day so that he could support his lavish lifestyle. She subpoenaed Lavaughn Newsom and Gary Doud who were prepared to testify that they also had cashed third-party checks for Mr. Day, but that no cocaine had been involved. The district court refused to allow the testimony on the ground that it was not material.[1] Ms. Peet asserts that the court's ruling violated the Sixth Amendment by prohibiting her from presenting a defense.
 
 
 16
 Evidentiary rulings are reviewed for abuse of discretion. United States v. Temple, 862 F.2d 821, 822 (10th Cir.1988). To establish a Sixth Amendment violation, Ms. Peet must show that the proffered testimony was material and favorable to her defense.[2] United States v. Valenzuela-Bernal, 458 U.S. 858, 867 (1982).
 
 
 17
 First, the appellant argues that Mr. Newsom's and Mr. Doud's testimony was material and favorable to her defense because it would have impugned Mr. Day's credibility. If offered for that purpose, however, it was merely cumulative of other evidence showing that Mr. Day was a liar, forger, thief, gambler, drug abuser and drunk. Refusal to admit cumulative evidence under these circumstances does not violate the Sixth Amendment. United States v. Swingler, 758 F.2d 477, 497-98 (10th Cir.1985).
 
 
 18
 Second, the appellant asserts that the testimony should have been admitted pursuant to Fed.R.Evid. 406 as evidence of Mr. Day's habits. However, stealing money through check forgery is not a "semi-automatic" act; thus it does not constitute a habit under the rule.[3] Cf. United States v. Troutman, 814 F.2d 1428, 1455 (10th Cir.1987) (extortion or refraining from extortion does not constitute habit).
 
 
 19
 Finally, the appellant argues that the fact that Messrs. Newsom and Doud had cashed checks for Mr. Day without exchanging drugs is relevant to show that no drugs were involved in the Fairchild/Peet check-cashing scheme. The check cashing by Mr. Newsom and Mr. Doud occurred at different times and involved different checks from those charged in the indictment. Further, the government maintains that some of the transactions between Mr. Day and Mr. Newsom did involve cocaine. In fact, Mr. Doud and Mr. Newsom were under government investigation at the time of trial.
 
 
 20
 The district court has wide discretion to limit testimony that is collateral to the issues charged in the indictment. United States v. Scopo, 861 F.2d 339, 345 (2d Cir.1988), cert. denied, 490 U.S. 1048 (1989). We conclude that it was not an abuse of discretion for the court to exclude Mr. Doud's and Mr. Newsom's testimony on the ground that it was not material, nor did that ruling violate the Sixth Amendment.
 
 
 21
 IV. EVIDENCE OF POSITIVE URINALYSIS AND DRUG PARAPHERNALIA.
 
 
 22
 At the time of her arrest, Ms. Peet had tested positive for cocaine use and had drug paraphernalia in her purse. Prior to trial she filed a motion in limine to exclude this evidence. The motion was granted subject to her testimony at trial. On direct examination at trial, Ms. Peet testified that she and the Fairchilds had used drugs together. On cross-examination, the government was permitted to ask Ms. Peet about her positive drug test and her possession of drug paraphernalia when arrested. The government asserted that this evidence was relevant to Ms. Peet's credibility. Ms. Peet contends that allowing these questions constituted error because Fed.R.Evid. 404(b) generally prohibits using prior bad acts to attack credibility.
 
 
 23
 Rule 404(b) states in pertinent part: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show an action in conformity therewith." This rule does not address using evidence of prior bad acts for purposes of impeachment.[4]
 
 
 24
 Impeachment through evidence of prior bad acts is governed by Fed.R.Evid. 608. That rule provides that a witness may be cross-examined as to specific instances of prior conduct if the conduct is probative of truthfulness or untruthfulness. While drug use may be used to attack a witness's ability to perceive the underlying events and testify lucidly at trial, it may not be used to attack general credibility. Jarrett v. United States, 822 F.2d 1438, 1446 (7th Cir.1987); United States v. Sellers, 906 F.2d 597, 602 (11th Cir.1990). Drug use is not probative of untruthfulness any more than other illegal conduct that does not involve deception. Accordingly, we conclude that the trial court erred in admitting evidence of Ms. Peet's prior drug use to impeach her credibility. Here, however, the error was harmless because the appellant admitted her drug use on direct examination. Harmless error does not require reversal. United States v. Wright, 826 F.2d 938, 943 (10th Cir.1987).
 
 
 25
 AFFIRMED.
 
 
 
 *
 Honorable Jim R. Carrigan, District Judge, United States District Court for the District of Colorado, sitting by designation
 
 
 **
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [1]
 Ms. Peet argues that she was denied the opportunity to call Mr. Newsom and Mr. Doud as defense witnesses. In fact, the district court did not deny compulsory process but simply sustained the government's objections to evidence of transactions outside the scope of the indictment
 
 
 [2]
 Error alone does not require reversal. Chambers v. Mississippi, 410 U.S. 284, 298 (1973). Rather the court must look at the ultimate impact of the error when viewed in conjunction with the trial court's refusal to permit the defendant to call other witnesses. Id
 
 
 [3]
 The Advisory Committee notes to Rule 406 state in pertinent part:
 A habit ... is the person's regular practice of meeting a particular kind of situation with a specific type of conduct, such as the habit of going down a particular stairway two stairs at a time, or of giving the hand-signal for a left turn, or of alighting from railway cars while they are moving. The doing of the habitual acts may become semi-automatic.
 
 
 [4]
 Prior drug use is admissible under 404(b) to show plan, motive, or intent in drug trafficking cases. See, e.g., United States v. Sturmoski, 971 F.2d 452, 459 (10th Cir.1992)